UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCIS KRAMER and
CHRISTINE KRAMER,

    Plaintiff,

v.                                      CASE NO:  8:20-cv-01304

STANTEC CONSULTING
SERVICES INC., a foreign
corporation,

    Defendant.
_____/

**MOTION TO DISMISS**

    COMES NOW Defendant, STANTEC CONSULTING SERVICES INC. ("Stantec"), who moves to dismiss Plaintiffs, FRANCIS KRAMER and CHRISTINE KRAMER (the "Kramers"), Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

                I.        **FACTUAL BACKGROUND**

    This lawsuit arose in connection with Sarasota County's project to decommission the Siesta Key Advanced Waste Water Treatment Plant and to begin pumping wastewater to mainland treatment facilities (the "Project"). The Project involved the horizontal directional drilling and installation of: (a) a 20 inch outer diameter sanitary force main;[1] and (b) a 20 inch outer diameter water main; under the Intracoastal Waterway from the west side of Siesta Key Island to Phillippi Estate Park in Sarasota.

    Stantec provided engineering consulting services to Sarasota County in connection with

---

[1] A sanitary force main is a pipeline which conveys wastewater under pressure from one point to another.

1

the Project, but did not conduct any drilling and was "not the general contractor". (Complaint ¶ 12). Rather, on or about April 26, 2016, Sarasota County entered into a contract with Southern Underground Industries Inc. ("Southern Underground") to perform general contractor services related to the Project. (Complaint ¶ 8).[2] Southern Underground and its drilling sub-contractor, Centerline Directional Drilling Services, Inc. ("Centerline"), engaged in horizontal directional drilling on an easement near the Kramer's property. (Complaint ¶ 13). The Kramers allege that – at some point during the Project – this drilling resulted in property damage to their home. The Kramers allege a single cause of action, namely, that Stantec was allegedly negligent in connection with its provision of engineering consulting services.[3]

## II. LEGAL ARGUMENT RE: NEGLIGENCE

**A.** **Burden of Proof:**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations omitted). Although this pleading standard "does not require detailed factual allegations it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) internal citations omitted). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950.

---

[2] The Court is respectfully requested to take judicial notice of the facts that Southern Underground is both a Florida Certified General Contractor and a Florida Certified Underground Utility and Excavation Contractor. Copies of the relevant license printouts from the Florida Department of Business and Professional Regulation are attached hereto as **Exhibit A**.

[3] Because the motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), only the specific facts alleged in the Complaint are properly before the Court. Thus, a more detailed factual recitation is unnecessary and duplicative.

B.  **Elements:**

As a preliminary matter, since this Court is sitting in diversity jurisdiction, the Court must apply Florida State substantive law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Florida law, professional negligence claims comprise four elements, namely: "(1) a legal duty requiring the defendant to protect others from unreasonable risks, (2) breach of that duty, (3) a causal connection between the defendant's conduct and the injury, and (4) damages." *Suffolk Constr. Co. v. Rodriguez & Quiroga Architects Chartered*, No. 16-CV-23851, 2018 WL 1335185, at *2 (S.D. Fla. Mar. 15, 2018) (citing *Williams v. Davis*, 974 So. 2d 1052, 1057 (Fla. 2007)).[4]

C.  **Elements not supported by Complaint:**

In this case, the Complaint fails to sufficiently allege the elements of (1) duty; (2) breach; and (3) causation. Each of these failures is discussed below.

  1.  **Complaint's Failure to Allege Duty:**

In Florida negligence actions, duty is a question of law. *Fla. Power & Light Co. v. Periera*, 705 So. 2d 1359, 1361 (Fla. 1998). Under Florida law, legal duties typically arise from: "(1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Williams*, 974 So. 2d at 1057. In this case, the Kramers have cited to no statute, regulation or case law in support of any alleged duty owed to them by Stantec. Moreover, the general facts

---

[4] Under Florida law, a "claim for professional negligence is similar to an ordinary negligence claim except that the negligent party must be engaged in a 'profession' as defined under Florida law, and the applicable standard of care is that degree of care used by similar professionals in the community under similar circumstances." *F.D.I.C. v. Kardos Appraisal & Consulting Corp.*, No. 6:12-CV-756-ORL-36, 2014 WL 235470, at *8 (M.D. Fla. Jan. 22, 2014) (citing *Moransais v. Heathman,* 744 So.2d at 973, 975–76 (Fla. 1999) *abrogated on other grounds by Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 402 (Fla. 2013)).

3

of the case are not sufficient to show that Stantec owed a duty to the Kramers.

In instances where a duty arises from the general facts of the case, Florida courts have explained that such duty "turns on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *BRE/Cocoa Beach Owner, L.L.C. v. Rolyn Companies, Inc.*, No. 612CV466ORL22GJK, 2013 WL 12158597, at *2 (M.D. Fla. Mar. 13, 2013) (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)).

Moreover, Florida Courts have explained that to "impose a duty, it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create* or *control* the risk before liability may be imposed. *Demelus v. King Motor Co. of Fort Lauderdale*, 24 So. 3d 759, 761 (Fla. 4th DCA 2009) (emphasis in original); accord *Aguila v. Hilton, Inc.*, 878 So.2d 392, 395, 396–97 (Fla. 1st DCA 2004).

In this case, the Kramers have not adequately plead that Stantec either "created" or "controlled" a risk related to them. Therefore, the Kramers have not adequately plead that Stantec owed a duty to them.

First, the scope of work performed by engineering firms is governed by the contract between the engineering firm and the underlying client. Here, the scope of Stantec's work was controlled by the contract between Stantec and Sarasota County. The Kramers have neither pled nor attached any such contract to show the scope of Stantec's work. Furthermore, the Kramers have neither alleged nor asserted a claim of a right to benefit from the contract of another, i.e., that they were intended third-party beneficiaries. While some Florida Courts have found that a consulting engineer may owe a duty to an injured party with whom the consulting engineer was not in privity of contract (*Geer v. Bennett*, 237 So. 2d 311, 312 (Fla. 4th DCA 1970); *Moore v. PRC Eng'g, Inc.*, 565 So. 2d 817, 820 (Fla. 4th DCA 1990)), such cases involved situations where

the contractual terms of the consulting engineer's engineering and inspection duties "encompassed a duty to ensure that each step of the construction was completed in a safe manner." In this case, the Kramers have only made conclusory allegations concerning the scope of Stantec's services to Sarasota County – and have not shown that Stantec was so intimately involved in the drilling process (or, more specifically, what may have allegedly gone wrong with the drilling process) that Stantec owed a duty to the Kramers.

Second, there is nothing in the Complaint to explain how Stantec owed a duty to the Kramers concerning drilling when Southern Underground, a Florida Certified General Contractor and Florida Certified Underground Utility and Excavation Contractor, performed the actual drilling. The Complaint includes the conclusory allegation that Stantec "directed the general contractor's actions". (Complaint ¶ 12). However, there is nothing in the Complaint to explain how this was done. For example, as noted above:

(i) Stantec was engaged by Sarasota County (which had in-house professional engineers) to provide certain engineering services;

(ii) Sarasota County separately contracted with Southern Underground (which also employed its own professional engineers) to act as the Project's general contractor; and

(iii) Southern Underground, as general contractor, engaged and supervised various appropriately licensed subcontractors to complete the underlying drilling.

Indeed, when disagreements arose between Sarasota County (for whom Stantec worked) and Southern Underground, Southern Underground did not shy away from taking independent action.[5]

Third and finally, it is worth noting that certain portions of the Complaint relating to duty "are no more than conclusions" and, therefore, "are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950. For example:

---

[5] Indeed, Southern Underground went so far as to sue Sarasota County. See Southern Underground Industries, Inc. v. Sarasota County Florida, Case No. 2019-CA-3436.

(i) Paragraph 11 of the Complaint alleges that Stantec approved of Southern Underground – but Sarasota County, not Stantec, contracted with and had final authority over all dealings with Southern Underground (as acknowledged in Paragraph 8 of the Complaint);

(ii) Paragraph 31 says that Stantec owed a duty to the Kramers, but fails to adequately explain how or why; and

(iii) Paragraph 33 of the Complaint alleges that Stantec breached its duty by negligently monitored the Project – but makes no allegations explaining why Stantec's monitoring was allegedly negligent (or, indeed, allegedly deficient in any way);

Based on the above, the Court should dismiss the Complaint.

**2.    Complaint's Failure to Allege Breach:**

Assuming, *arguendo*, that the general facts of the case gave rise to a duty, the Kramers have failed to allege a breach of such duty.

In general, where Florida Courts have found that professionals owe a duty, such duty has been described as follows: "the duty imposed by law upon professionals rendering professional services is to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances." *Lochrane Eng'g, Inc. v. Willingham Realgrowth Inv. Fund*, Ltd., 552 So. 2d 228, 232 (Fla. 5th DCA 1989). Thus, a breach occurs when a professional fails to perform services in accordance with such standard of care.

In this case, however, the Kramers have made only general allegations which do not explain how Stantec breached a duty to them. For example, the Complaint alleges that "Stantec breached such duty by negligently preparing project drawings…." (Complaint ¶32).

First, there is nothing in the Complaint to explain the relevant standard of care or how such standard of care would be manifested by an engineering firm under similar circumstances.

Second, there is nothing in the Complaint to explain how Stantec's actions were negligent, i.e., how Stantec allegedly failed to act in accordance with the appropriate standard of care. For

example, the Complaint baldly alleges that certain project drawings were negligently prepared (Complaint ¶ 32) and that certain monitoring was negligently conducted (Complaint ¶33). However, the Complaint contains zero detail as to how such drawings / monitoring was allegedly defective. The Complaint does not explain what was wrong with the drawings / monitoring, i.e., in what way such drawings / monitoring were defective. The Complaint also does not provide copies of the drawings / monitoring plans or any commentary thereupon.

Put another way, the Kramers are trying to convert a breach of duty analysis into a *res ipsa loquitur* analysis – arguing that the mere existence of alleged damage to the Kramer's property must necessarily mean that there was negligence. In point of fact, the mere occurrence of alleged damage to a particular property is not sufficient to establish a breach of duty in a professional negligence case. Rather, more specific facts are needed.

Based on the above, the Court should dismiss the Complaint.

### 3. Complaint's Failure to Allege Causation:

Assuming, *arguendo*, that the general facts of the case gave rise to a duty and a breach of such duty, the Kramers have failed to allege causation between same and their alleged damages.

First, as noted above, there were a number of non-party, licensed professionals involved in connection with the Project which non-party professionals performed all of the actual drilling work. There is nothing in the Complaint which explains how the Kramers' alleged damages were the direct and proximate result of Stantec's actions (and not the result of the action / inaction of such non-party professionals).

Second, there is nothing in the Complaint to suggest that – because allegedly hitting a subterranean obstruction caused vibrations – Stantec was somehow negligent. Indeed, the Complaint claims that "Southern Underground ran into what they deemed an obstruction."

(Complaint ¶17). If, in fact, an obstruction was discovered which lead to vibrations, such an occurrence further contradicts the Kramers' causation allegations. More specifically, such an occurrence is an unforeseeable, intervening cause with respect to any alleged failure in design / monitoring.

Based on the above, the Court should dismiss the Complaint.

### III. CONCLUSION

In conclusion, Florida Law requires that professional negligence claims show: (1) a duty, (2) breach of that duty, (3) causation, and (4) damages. In the instant case, Plaintiffs have failed to allege (1) a duty, (2) breach of that duty, and (3) causation. Accordingly, the Court should dismiss the Complaint and award such other and further relief to Defendants as the Court deems just and proper.

Respectfully submitted,

**/s/Michael J. Corso**
Michael J. Corso
Luca L. Hickman

I HEREBY CERTIFY that on June 8, 2020 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Morgan R. Bentley, Esquire
FBN:  0962287
Brian D. Goodrich, Esquire
FBN:  0106948
BENTLEY & BRUNING, P.A.
783 South Orange Avenue, Suite 300
Sarasota, FL  34236
Tel:  941.556.9030
Fax:  941.312.5316
mbentley@bentleyandbruning.com
bgoodrich@bentleyandbruning.com

jbradley@bentleyandbruning.com
Attorney for Plaintiff

                                          **/s/ Michael J. Corso**
Michael J. Corso
FL Bar No. 228729
Luca L. Hickman
FL Bar No. 118731
Post Office Box 280
Fort Myers, Florida 33902-0280
Telephone: 239.344.1263
Fax: 239.344.1539
*Attorneys for Defendant*
Michael.Corso@henlaw.com
sherry.zellner@henlaw.com
Luca.hickman@henlaw.com
susan.peters@henlaw.com

# Exhibit A

12:20:46 PM 6/8/2020

## Licensee Details

### Licensee Information

| | |
|---|---|
| Name: | ORTA, ROBYN (Primary Name) |
| | SOUTHERN UNDERGROUND INDUSTRIES, INC. (DBA Name) |
| Main Address: | 8322 NW 156TH TERRACE |
| | MIAMI LAKES  Florida  33016 |
| County: | DADE |
| License Mailing: | |
| LicenseLocation: | 3453 NW 44TH STREET #205 |
| | FORT LAUDERDALE   FL   33309 |
| County: | BROWARD |

### License Information

| | |
|---|---|
| License Type: | Certified General Contractor |
| Rank: | Cert General |
| License Number: | CGC1511806 |
| Status: | Current,Active |
| Licensure Date: | 08/18/2006 |
| Expires: | 08/31/2020 |

### Special Qualifications | Qualification Effective

| | |
|---|---|
| Construction Business | 08/18/2006 |

### Alternate Names

**View Related License Information**
**View License Complaint**

**2601 Blair Stone Road, Tallahassee FL 32399** :: Email: **Customer Contact Center** :: Customer Contact Center: 850.487.1395

The State of Florida is an AA/EEO employer. **Copyright 2007-2010 State of Florida. Privacy Statement**

Under Florida law, email addresses are public records. If you do not want your email address released in response to a public-records request, do not send electronic mail to this entity. Instead, contact the office by phone or by traditional mail. If you have any questions, please contact 850.487.1395. *Pursuant to Section 455.275(1), Florida Statutes, effective October 1, 2012, licensees licensed under Chapter 455, F.S. must provide the Department with an email address if they have one. The emails provided may be used for official communication with the licensee. However email addresses are public record. If you do not wish to supply a personal address, please provide the Department with an email address which can be made available to the public.

12:20:59 PM 6/8/2020

## Licensee Details

### Licensee Information

| | |
|---|---|
| Name: | COMERFORD, BELSERI L (Primary Name) |
| | SOUTHERN UNDERGROUND INDUSTRIES INC (DBA Name) |
| Main Address: | 3453 NW 44TH STREET 205 |
| | LAUDERDALE LAKES  Florida  33309 |
| County: | BROWARD |
| License Mailing: | |
| LicenseLocation: | |

### License Information

| | |
|---|---|
| License Type: | Certified Underground Utility and Excavation Contractor |
| Rank: | Cert Under |
| License Number: | CUC1224635 |
| Status: | Current,Active |
| Licensure Date: | 10/20/2008 |
| Expires: | 08/31/2020 |

| Special Qualifications | Qualification Effective |
|---|---|
| Construction Business | 10/20/2008 |

### Alternate Names

**View Related License Information**
**View License Complaint**

2601 Blair Stone Road, Tallahassee FL 32399 :: Email: **Customer Contact Center** :: Customer Contact Center: 850.487.1395

The State of Florida is an AA/EEO employer. **Copyright 2007-2010 State of Florida. Privacy Statement**

Under Florida law, email addresses are public records. If you do not want your email address released in response to a public-records request, do not send electronic mail to this entity. Instead, contact the office by phone or by traditional mail. If you have any questions, please contact 850.487.1395. *Pursuant to Section 455.275(1), Florida Statutes, effective October 1, 2012, licensees licensed under Chapter 455, F.S. must provide the Department with an email address if they have one. The emails provided may be used for official communication with the licensee. However email addresses are public record. If you do not wish to supply a personal address, please provide the Department with an email address which can be made available to the public.